**In re the MARRIAGE OF Judy ELLERBROEK and James Wade Ellerbroek, Jr.**

**Upon the Petition of Judy Ellerbroek, Petitioner-Appellee,**

**and Concerning James Wade Ellerbroek, Jr., Respondent-Appellant.**

**No. 85–486.**

Court of Appeals of Iowa.

Sept. 24, 1985.

Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for respondent-appellant.

Dick H. Montgomery of Greer, Nelson, Montgomery, Barry & Bovee, Spencer, for petitioner-appellee.

Lachlan Murphy Bonander, Larchwood, for the parties' minor children.

Considered by OXBERGER, C.J., and SNELL, and SACKETT, JJ.

SACKETT, Judge.

Judy and James Wade (hereafter called "Wade") were married in March of 1969. They have two children, James born in September of 1969 and Jennifer born in October of 1973. The trial court dissolved the marriage, made a division of property, awarded custody of the two children to Judy and ordered Wade to pay child support. Wade appeals contending that the custody of James should have been awarded to him and the property award was inequitable.

## I. Custody

Wade sought custody of his son James. He did not seek custody of Jennifer. Wade asks us to give greater weight to James' expressed desire to live with Wade and place James with him.

James is an extremely intelligent, articulate, and well-behaved sixteen-year-old. While professing no animosity toward his mother, he is positive and firm in his position that he wants to live with his father. He threatens to run away if forced to live with his mother. James and his father have an excellent relationship. During the course of the parties' separation, James lived with his father for a short time and then lived with his paternal grandparents.

■ The question is what part does James' wish play in determining his best long-range interests. As we said in *In re Marriage of Castle*, 312 N.W.2d 147, 149 (Iowa App.1981), the ultimate question is always which parent can minister more effectively to the long-range best interest of the children. It is James' life we are dealing with and not that of his parents. *Halstead v. Halstead*, 259 Iowa 526, 535, 144 N.W.2d 861, 866 (1966).

The Iowa courts have long recognized that deciding custody is far more complicated than asking children what parent they want to live with. *See In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981).

When we speak of what is best for the child, we do not mean that which the child wants....
*Lursen v. Hendrichs*, 239 Iowa 1009, 1015, 33 N.W.2d 383, 386 (1948).

Preferences of minor children while not controlling are relevant and cannot be ignored. *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979).

Iowa Code section 598.41(3)(f) provides that in considering what custody arrangement is in the best interests of the minor child, the court shall consider whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.

Children whose parents are divorcing suffer sufficient turmoil. It would be unfair to add to that turmoil in some instances by forcing them to choose between their parents. Additionally, a child may seek to manipulate the parents if allowed to have total control over the choice.

Asking a child to choose between parents can be appropriate in limited circumstances.... It can also be the cruelest and most inappropriate of solutions. The child may respond out of fear of one parent, or he may respond to what he perceives as his parents' needs and not his own. He may believe the unstable, sick or lonely parent needs him more than does the parent he sees as well-adjusted.
Eitzen, *A Child's Right to Independent Legal Representation in a Custody Dispute*, 19 Fam.L.Q. 53, 56 (Spring 1985) (citing Clawar, *Why Children Say What They Say*, 6 Fam.Advoc. 25 (Fall 1983)).

In determining the weight to be given to James' testimony, we consider numerous factors.

*Age And Educational Level*

James was fifteen[1] and in the ninth grade at the time of trial. The Iowa courts

---

**1.** In some jurisdictions, the effect given to a child's wishes as to who shall have his or her custody is governed by statute. Several jurisdictions have adopted statutes which provide upon reaching a specified age the child whose custody is at issue must be allowed to choose its custodian. In construing these statutes, the courts have held that if the court finds that the home

have considered the age and educational level in several cases involving the preference of a minor child. The court particularly considered the wishes of a girl thirteen years of age and apparent maturity in *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979). However, the court determined that the wishes of an eleven-year-old to be placed in custody of mother was not in her best interest. *Lursen v. Henrichs*, 239 Iowa 1009, 33 N.W.2d 383 (1948). In *Smith v. Smith*, 257 Iowa 584, 133 N.W.2d 677 (1965), the wishes of eight- and twelve-year-olds were entitled to less weight in modification than in original custody. Very little consideration was given to the wishes of a six-year-old boy where the court concluded he was too immature for his wish to be given much consideration. *Dow v. Dow*, 240 Iowa 145, 35 N.W.2d 853 (1949).

Strong wish of sixteen-year-old to be with his father, along with strong hostile feelings toward mother who was unable to control child, was considered by the court in granting custody to father. *In re Marriage of Jones*, 309 N.W.2d 457, 461–62 (Iowa 1981). The wish of a twelve-year-old to be with his father was not given as much weight where he got along with his mother and the court was concerned about the influence the sixteen-year-old would exert over him. *Id.* The wish of a thirteen-year-old girl to live with her father was entitled to some weight in *In re Marriage of Woodward*, 228 N.W.2d 74, 75 (Iowa 1975). However, an occasionally expressed preference by children ages nine, eleven, and twelve, to live with mother was not sufficient to warrant the transfer of custody from father. *In re Marriage of Powers*, 226 N.W.2d 810, 812 (Iowa 1975). The wishes of twelve-year-old boy to remain in the home of his grandparents with whom he had lived for the past ten years should be recognized and accorded all possible def-

erence. *Halstead v. Halstead*, 259 Iowa 526, 535, 144 N.W.2d 861, 866 (1966).

### Strength Of Preference

James' preference is strong, and he has been consistent in his wish to live with his father. The unqualified desires of fifteen- and thirteen-year-olds to live with their father added impetus to the court's decision to transfer custody to father. *Jones v. Jones*, 175 N.W.2d 389, 392 (Iowa 1970).

### Intellectual And Emotional Make-Up Of Child

James has superior intelligence, an above-average ability to handle problems, and is a well disciplined child.

### Relationship With Family Members

James has no negative feelings toward his mother and sister and professes to love them despite the fact he has not chosen to live with them.

### Reason For Decision

James seeks to live with his father not because he is unhappy in his mother's home and seeks greener pastures. If he were seeking greener pastures, his preference would be given less weight.

### The Advisibility Of Recognizing Teenagers' Wishes

James is of an age and background where he can and should be making decisions about what direction his life will take. All of the decisions he makes will not be the very best decisions; however, when one makes his decision, he cannot blame others if things do not work correctly.

### Recognition That We Are Not Aware Of All Factors That Influenced Decision

Although the testimony has given us some insight, we are not truly knowledgeable about the interaction of this family. James has been privy to these interactions, and they obviously have affected his decision.

of either of the parties is a proper environment, then the court must grant custody in accord with the child's election. Annot., 4 A.L.R.3rd 1396, 1400 (1965).

Iowa, while statutorily providing that consideration shall be given under certain circumstances to the minor's request for a guardian if the minor is fourteen years of age or older, *see* Iowa Code section 633.559 (1985), has not be statute mandated any age at which a child's preference be given greater weight in a custody determination.

After analyzing these factors, we agree with Wade that substantial weight should be given to James' preference and in our de novo review we have done so.

We also look at these other factors:

1. Placing James with his father will separate him from his sister.

In attempting to foster the children's best interests, the court ordinarily attempts to keep children of broken homes together. The underlying rationale is that split custody deprives the children of the benefit of constant association with each other which, as innocent victims of marital bankruptcy, they should not be subjected to. This rule has been held to not be immeritable, but may be departed from if there exists good and compelling reason. *In re Marriage of Grandinetti*, 342 N.W.2d 876, 878–79 (Iowa App.1983).

The rule, however, is not ironclad and circumstances may arise which demonstrate that separation may better promote the long-range interests of children. *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981).

2. Wade has exhibited violent behavior toward his wife and children.

3. Wade has relocated and lives with girlfriend whose abilities as a step-mother are not shown.

4. Wade has exhibited irresponsible and immature behavior since the parties' separation. However, he was a patient at the Menninger Clinic and there is no evidence of immature actions following treatment.

5. James is a child who feels concern for others and is anxious to please them.

6. Rita Frevert, a licensed psychologist chosen to evaluate the custody issue, recommended that Judy have custody of both children.

7. We give deference to the trial court who has viewed the witnesses and parties.

■ Considering all factors, we affirm the custody determination made by the trial court.

## II. Property Division

The trial court made the following property division:

| Judy | | Wade | |
|---|---|---|---|
| Homestead | $47,424 | Household goods | $2,000 |
| Household goods | 2,000 | Personal property | 24,239 |
| Personal property | 8,450 | Insurance proceeds | 10,961 |
| | $57,874 | | $37,196 |

Wade contends the property division is inequitable. The record reflects that this couple has received substantial gifts from both of their parents during the course of the marriage. Judy received some $22,400 in various amounts from her parents which were substantiated by checks. Both parties testified that Wade's father gave them money to help Wade finish college. The trial court determined there was insufficient evidence to show gifts other than the $22,400 were made or that the evidence shows the gifts were made to the parties jointly and should not be considered in making an equitable division of the assets. The trial court then went on to allocate the $22,400 cash gifts to Judy. Wade claims this was inequitable as well.

Iowa Code section 598.21 provides in relevant part:

1. . . . The court shall divide all property, except inherited property or gifts received by one party, equitably between the parties. . . .

2. Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

We said in *In re The Marriage of Byall*, 353 N.W.2d 103, 106 (Iowa App.1984), while recognizing it was unlikely that the wife would have received gifts from the husband's parents had the parties not been married, we did not find the trial court's refusal to credit the entire amount of gifts made to parties jointly to the husband inequitable.

While the courts are more prone to set aside gifts which are easily identifiable as

opposed to those that have lost their identity in being comingled with other family funds or spent for nontangible items, we cannot isolate the gifts from Judy's parents. Judy admits that Wade's parents contributed to their support while Wade attended college. There is evidence in the record that they made other gifts and concessions to the couple. While these gifts are not as specifically documented as the gifts from Judy's parents, we determine it was inequitable to ignore them in their entirety.

Furthermore, Wade complains the trial court erred in allocating to him questionable insurance claim for motor vehicles of $15,000 and in ignoring Judy's pension. During the parties' separation, Wade drove a car into a car operated by Judy. As a result of the altercation, Wade was charged with attempted murder and criminal mischief. The insurance company may consider the damage to the car to be intentionally done by the insured and deny the claim. Following the altercation, Wade was incarcerated and then hospitalized at Menninger Clinic.

Wade also contended the trial court failed to consider Judy's pension. Judy claims that the distribution was fair because Wade lost his job and pension because of the altercation, that the car was destroyed by his actions, and that he has more education than she does. He has a college degree; she one year of business college. She further claims the award is fair because Wade borrowed $10,000 against their life insurances. The life insurance money has been used for attorney fees to defend Wade on the criminal charges. Judy claims she needs the home for the children. Judy further points out that Wade has failed to support her and their daughter during the separation.

We recognize that while Wade did not contribute to Judy's and Jennifer's support during the separation, Judy lived in the family home and Wade's parents cared for James. He was hospitalized and he was unemployed. Judy currently is earning $18,000 annually; Wade $7,200 annually. We modify the award and establish a lien in Wade's favor of $15,000 as a charge against the personal residence of the parties. Said amount shall be paid when the youngest child graduates from high school, when Judy and the children no longer live in the home, or July 1, 1991, whichever time or event first occurs. Judy shall pay Wade interest on said amount from the date of the decree at 10 per cent per annum payable annually.

AFFIRMED AS MODIFIED.

All judges concur except OXBERGER, C.J., who dissents.

OXBERGER, Chief Judge, dissenting.

I dissent.