# IN THE COURT OF APPEALS OF IOWA

No. 3-1070 / 13-0662
Filed March 12, 2014

IN RE THE MARRIAGE OF ALLAN LEGRAND
AND CONNIE LEGRAND

Upon the Petition of
ALLAN LEGRAND,
    Petitioner-Appellant,

And Concerning
CONNIE LEGRAND,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

Allan appeals the award of physical care of two children to Connie, the calculation of child support, and the requirement that he pay a bill for the internet provider. **AFFIRMED.**

Andrew Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

Bradley Boffeli of Boffeli & Spannagel, P.C., Dubuque, for appellee.

Considered by Vogel, P.J., and Mullins and McDonald, JJ.

**MULLINS, J.**

Allan LeGrand appeals from a decree dissolving his marriage to Connie LeGrand. Allan argues the district court erred by giving joint legal custody to both parties but physical care to Connie. He also contends the district court erred in calculating his child support obligation and in ordering him to pay the utility bills of the marital home. On February 5, 2014, we filed a decision in which we affirmed the district court order. We subsequently granted Connie's petition for rehearing to address her request for appellate attorney fees and, pursuant to Iowa Rule of Appellate Procedure 6.1204, vacated our prior decision. After rehearing, we affirm and grant Connie $1500 in attorney fees.

## I.     Background Facts and Proceedings.

Allan and Connie LeGrand married in 1989. The petition for dissolution of marriage was filed in June 2012. They had been married twenty-three years at the time of trial. Allan was forty-five years old and Connie was forty-two. The parties have four children: two adult female children, and fifteen-year-old twins, L.L. (a boy) and S.L. (a girl).

At the time of trial, Allan worked part-time at Energetics Industrial as a delivery driver, earning ten dollars an hour. Previously, he worked for Horsfield Construction from April 2012 to December 2012 as a truck driver, earning $14.50 an hour. He testified he worked seasonally for Horsfield and anticipated they would rehire him in spring 2013. Prior to Horsfield, and for a large part of their marriage, Allan worked for Superior Welding, which required twelve-hour days

and significant travel. Consequently, Connie was the children's primary caregiver and had been for most or all of their lives.

Connie had worked for Nagle Publishing for eighteen years as a part-time publishing assistant. Nagle was never able to hire her for more than part-time work. She earned $12.50 per hour and worked a varied part-time schedule: one week each month, she would work 36.5 hours, to meet a publishing deadline; the remaining weeks of the year, she worked 26.5 hours.

Connie left the marital home in May 2012 and moved in with her parents, intending to obtain an apartment after the dissolution. S.L. joined her mother in the maternal grandparents' home. L.L. remained living with Allan in the marital home. In September 2012, the district court entered a temporary order granting Allan physical care of L.L. and Connie physical care of S.L., with visitation for each noncustodial parent. The children have Title XIX insurance. S.L. has a major hip injury from playing soccer and will require several future surgeries. L.L. also has had a number of health issues. Connie has largely been responsible for making arrangements for the twins' medical care, with help from her own parents to get them to appointments.

L.L. testified at trial that while living with Allan in the marital home after the parties had separated, Allan spent many evenings with his girlfriend, leaving L.L. alone, including around ten times overnight. Connie would occasionally check on L.L. in the marital home. She observed the house had fallen into very poor condition with dirty dishes left everywhere covered in spoiled or moldy food, spoiled food in the refrigerator, and BB gun bullet holes in walls and in decorative

items, which were Connie's personal belongings. L.L. testified the house was in an unsanitary condition. Connie also testified L.L. had used one of the girl's old bedrooms as a shooting range. L.L. admitted to shooting the BB gun purposely at Connie's personal items. When asked why, he testified, "I was just bored. I don't know." Connie had received a letter from a school truancy officer warning that L.L. had been missing many days of school. L.L. admitted he had missed some school to go hunting and testified he had a 1.4 grade point average.

At the time of trial, the marital home was in foreclosure, and Allan and L.L. had moved in with Allan's girlfriend and her then-sixteen-year-old son. The parties filed a pretrial stipulation outlining and dividing their assets and debts, including an equitable division of personal items from the marital home. The district court held trial in the matter on March 14, 2013. The court heard testimony from Allan; Connie; S.L.; L.L.; an adult daughter, Megan; and Connie's mother, Mary. The parties also offered into evidence child support guideline worksheets reflecting different net incomes for both Allan and Connie.

On March 28, 2013, the court issued a judgment and decree of dissolution of marriage. The decree gave the parties joint legal custody and Connie physical care of L.L. and S.L. It ordered Allan to pay $689 per month in child support. It also divided the marital property, incorporating the pretrial stipulation, and ordered Allan to pay the remaining utility bills. Allan appeals, arguing the court should have given him physical care of the children, the court calculated child support incorrectly, and Connie should have to pay an outstanding utility bill.

**II.     Standard of Review.**

We review cases tried in equity de novo.  *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).  Although we decide the issues raised anew, we give deference to the district court's findings, especially those involving credibility of witnesses.  *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006)*.*

**III.    Analysis.**

**A.     Physical Care.**

Allan contends the district court erred in awarding physical care to Connie. He argues the court should have awarded him physical care because he can better meet the children's needs.  He also argues the court did not give sufficient weight to L.L.'s preferences.  Finally, he argues Connie's current residence is unsuitable for the children.

In matters of child custody, the first and governing consideration of the court is the best interest of the child.  Iowa R. App. P. 6.904(3)(o).  Prior cases have little precedential value, except to provide a framework for analysis; we must base our decision on the facts and circumstances before us.  *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).  The Iowa Code provides a nonexclusive list of factors the court shall consider in determining a custodial arrangement.  Iowa Code § 598.41(3) (2011).  Here, both parties agreed to, and

the court awarded joint legal custody.[1]  Neither party requested joint physical care,[2] and the district court granted physical care to Connie.

"The ultimate objective of a physical care determination is to place the child in the environment most likely to bring him to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The critical issue is "which parent will do better in raising the child[.]" *In re Marriage of Barry*, 588 N.W.2d 711, 712 (Iowa Ct. App. 1998).  The statutory factors for determining custody and the factors identified in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974),[3] must be considered when determining the award of physical care.  *Will*, 489 N.W.2d at 398.

---

[1] Custody is "a parent's rights and responsibilities toward the child in matters such as decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction."  *Will*, 489 N.W.2d at 397.

[2] Physical care is the "right and responsibility to maintain the principal home of the minor child and provide for the routine care of the child."  *Will*, 489 N.W.2d at 397.  If either party had requested joint physical care, the court would have been required to consider the request.  Iowa Code § 598.41(5).

[3] These factors are:
> 1. The characteristics of each child, including age, maturity, mental and physical health.
> 2. The emotional, social, moral, material, and educational needs of the child.
> 3. The characteristics of each parent, including age, character, stability, mental and physical health.
> 4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
> 5. The interpersonal relationship between the child and each parent.
> 6. The interpersonal relationship between the child and its siblings.
> 7. The effect on the child of continuing or disrupting an existing custodial status.
> 8. The nature of each proposed environment, including its stability and wholesomeness.
> 9. The preference of the child, if the child is of sufficient age and maturity.
> 10. The report and recommendation of the attorney for the child or other independent investigator.
> 11. Available alternatives.

In granting physical care to Connie, the district court found that although both parents were capable of caring for the children, Connie was the superior choice. It determined that Connie, as primary caregiver throughout their lives, understood the children's needs and could provide more stability in the future. The court noted, based on Allan's testimony and mannerisms, his controlling nature would likely hamper the parents' ability to communicate about the children's needs. It found, based on his past conduct, Allan had issues with commitment and fidelity and would provide an unstable environment for the children, particularly with respect to his living with his new paramour. Upon our review, we find these factual determinations made by the district court are supported by the record, and we defer to them in our analysis.

While L.L. lived with Allan in the marital home, Allan regularly left L.L. alone to spend time with his paramour, sometimes overnight. Allan failed to maintain the marital home in a sanitary condition, leaving dirty dishes and spoiled, moldy food out. L.L. shot his BB gun in the house, filling the walls of one of the girls' former bedrooms with holes and purposefully damaging some of Connie's personal items. L.L. has missed enough school days to warrant a warning letter from the school truancy officer. L.L. has a 1.4 grade point average and admitted to missing school days to go hunting. Allan's past conduct has thus demonstrated his inability to provide a suitable environment for or to properly supervise L.L.

---

12. Any other relevant matter the evidence in a particular case may disclose.

*Winter*, 223 N.W.2d at 166-67.

Upon our review, we agree with the district court that Connie had been the children's primary caregiver most of their lives. Connie's testimony demonstrated clear concern and commitment to both children's care and development. She has strong support from the children's grandparents, on whom the children often rely.

Allan argues the district court should have given more weight to L.L.'s preference to live with his father and granted Allan physical care of L.L. In determining which parent should be granted physical care, the court's primary concern is the best interest of the child. *Will*, 489 N.W.2d at 398. Iowa Code section 598.41(3) mandates a list of factors "the court shall consider" when determining whether joint custody under section 598.41(2) is in the best interest of a minor child. Among those factors is "[w]hether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity." Iowa Code § 598.41(3)(f). Section 598.41(4), however, limits the legislative mandate of those factors by explaining that "[s]ubsection 3 shall not apply when parents agree to joint custody." *Id.* § 598.41(4). In the present case, the parties agreed to joint custody. Thus, pursuant to section 598.41(4) we are not required to apply the subsection 3 factors. Although not required, those subsection 3 factors remain appropriate for our consideration when determining the award of physical care. *Will*, 489 N.W.2d at 398. L.L. testified he preferred to remain with Allan because he and Allan enjoy hunting and fishing together and Allan takes L.L. to baseball. In determining the weight to give L.L.'s testimony, we have considered the

factors listed in *In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258-60 (Iowa Ct. App. 1985).[4] We have considered his preferences together with other evidence in the record that discloses that L.L. needs more guidance and supervision than he received while under Allan's care.

Finally, Allan argues his home is more suitable for the children than Connie's current living arrangement. The home to which Allan refers is his paramour's home, where the children will have their own bedrooms. Currently, Connie and S.L. share a room, and L.L. has his own room. We do not find this arrangement unsuitable. Also, Connie testified she intends to move into a new home after the dissolution.

On our de novo review, after considering the arguments raised by the parties, and giving deference to the credibility determinations of the district court, we find both children are more likely to achieve healthy mental, physical, and social maturity in Connie's care. Therefore, we agree with the district court's decision to award Connie physical care.

### B. Child Support.

Allan contends the district court calculated his child support obligation incorrectly by using his earning capacity rather than his actual income. In applying the child support guidelines, the court must determine the parents'

---

[4] Those factors include the child's age and education level, the strength of preference, the intellectual and emotional make-up of the child, relationship with family members, the reasons given for the stated preference, the advisability of recognizing the child's wishes, and the recognition that the court is not aware of all factors that influence the stated preference. *Ellerbroek,* 377 N.W.2d at 258-60.

monthly income from the most reliable evidence presented. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). The district court found

> [Allan] is now working for Energentics MS as a delivery person, earning $10 per hour. He started this employment in January of 2013, after having been laid off by Horsfield Construction for the winter. He anticipates being able to return to Horsfield Construction once the weather improves and the construction projects commence again in spring. He was earning $14.50 per hour driving a truck and running heavy equipment for Horsfield. He represented that his 2012 income was approximately $16,285.00. He stipulated that his annual income could potentially be $20,800.00.

Allan testified he anticipated Horsfield would rehire him in the spring of 2013. He also stated he worked seasonally and only part-time.

Courts are required to apply the Iowa Child Support Guidelines set out in Chapter 9 of the Iowa Court Rules. Rule 9.11 proscribes variance from the guidelines unless the court provides "a written finding that the guidelines would be unjust or inappropriate[.]" Iowa Ct. R. 9.11. In determining net monthly income, "the court may impute income[.]" Iowa Ct. R. 9.11(4). However,

> The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.

*Id.* The court ruled

> [Allan] is capable of earning full time wages and will likely return to Horsfield. The need to provide for his children dictates he work full-time. He has no medical or emotional conditions to preclude this. [Connie] on the other hand will need time to care for [S.L.] once she has additional surgeries [for her hip injury]. Full time employment has not been available to her over the course of her 18 years with Nagle. She has traditionally been the primary care provider for the children and will continue to do so under this decree.

Connie argues, "The District Court may not have expressly stated that 'substantial injustice' would incur [sic], but the District Court listed its reasons for imputing Allan's income and those reasons clearly give the inference that substantial injustice would incur [sic]." We disagree that the district court's findings give rise to the inference that substantial injustice would occur. We do find, however, that the court's balancing of Allan's ability to work full time and Connie's long-term employment history with Nagle, coupled with her continuing and future care of the children, is a minimally sufficient written finding that imputing Allan's income is necessary to do justice between the parties. Consequently, we affirm the district court's use of imputed income as to Allan.

Allan also contends the district court determined Connie's income incorrectly: "The District Court never directly states but one can glean from its findings that it concluded Connie's income was only $17,400, . . . ($12.50 x 26.5 x 3 x 12) + ($12.50 x 36.5 x 1 x 12)."[5] The district court does not make explicit its conclusion as to the amount of Connie's net income. Although we encourage trial courts to include their calculations to aid our review, we find after our examination of the record, we are able to rule. Our examination of the record shows the district court found Connie's income was the amount reported in her 2012 W-2, $19,412.50. We affirm the district court's order of $689 per month in child support.

---

[5] The calculation Allan offers incorrectly calculates Connie's income based on forty-eight weeks in a year.

### C. Utility Bill.

Allan contends the district court erred in ordering him to pay the utilities on the marital home, including an internet bill of around $400 he alleges was left in arrears at the time Connie moved out in April 2012. Upon dissolution, courts are required to divide the property equitably between the parties. Iowa Code § 598.21(1), (5). The factors the court must consider are set out in Iowa Code section 589.21(5). In dividing property, there need not be an equal division if the division is justified and equitable. *In re Marriage of Anliker*, 694 N.W.2d 535, 542 (Iowa 2005). In their pretrial stipulation, the parties agreed Allan would take his retirement account of nearly $24,000 and Connie would take hers, a $3200 value. They also agreed Connie would take a vehicle worth around $6000. They disputed who should pay several bills totaling over $1000, and the court ordered Allan to pay them. Upon our review, this appears to be an equitable division of the parties' assets and debts. We affirm the district court order for Allan to pay the utility bill.

### D. Appellate Attorney Fees.

Connie requests appellate attorney fees and submitted a Statement of Legal Services. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend

the decision of the trial court on appeal." *Id.* Under the circumstances of this case, we order Allan to pay $1500 of Connie's appellate attorney fees.

## IV. Conclusion.

Following our de novo review, we affirm the district court dissolution decree granting both parties legal custody and Connie physical care. We also affirm Allan's obligation to pay $689 in child support and the remaining utility bills from the marital home. Finally, we order Allan to pay $1500 of Connie's appellate attorney fees.

**AFFIRMED.**