# IN THE COURT OF APPEALS OF IOWA

No. 15-1531
Filed May 11, 2016

IN RE THE MARRIAGE OF JOHN JAY WALSH JR.
AND ANGEL NICOLE WALSH

Upon the Petition of
**JOHN JAY WALSH JR.,**
        Petitioner-Appellant,

And Concerning
**ANGEL NICOLE WALSH,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt,

Judge.


        Petitioner appeals the district court's decision denying his application to

modify the physical care provision of the parties' dissolution decree. **AFFIRMED.**


        Richard R. Schmidt of Spaulding, Berg & Schmidt, P.L.C., Des Moines, for

appellant.

        Jami J. Hagemeier of Williams & Hagemeier, P.L.C., Des Moines, for

appellee.


        Heard by Vogel, P.J., Doyle, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

John Jay Walsh Jr. has appealed from the decision of the trial court that refused to modify the original decree granting physical care of his minor daughter, S., to the child's mother, Angel Nicole Walsh. In addition John appeals from the decision of the trial court awarding Angel one-half of her attorney fees. We affirm the district court.

## I. Statement of Facts

John and Angel were married in February 1995. The parties had two minor children, J. and S. The parties' marriage was dissolved by a decree entered January 30, 2008. The parties were granted joint legal custody of their two children, but Angel was granted physical care. John was granted liberal visitation rights. J. is now over eighteen years of age and is presently living with John. S. became fifteen in July 2015. On June 30, 2014, John filed a petition to modify the dissolution decree requesting that he be granted physical care of S. John contends there has been a substantial and material change of circumstances and he has the ability to provide superior care for S.

S. developed an anxiety disorder, talked to her mother about it, and was taken to see a doctor in February 2015. Initially, the problem appeared to be associated with her schoolwork. Sometime later, the anxiety led to thoughts of self-harm. Angel arranged for S. to see a child psychiatrist in April 2015 when she was advised of S.'s consideration of self-harm. S. was tearful in her discussion with the psychiatrist and indicated that her anxiety was primarily related to family issues and specifically her relationship with her mother. S. refused to have joint counseling with her mother. It developed that S. was quite

aware of the pending modification action, even though her mother had avoided discussing it with her. It was clear that John had discussed the matter in some depth with S. prior to the meeting with the psychiatrist.

A request was made that a guardian ad litem (GAL) be appointed for S., and Diane Dornburg was appointed. She found S. consistently expressed a strong desire to live with John. The GAL carefully considered the appropriate factors in evaluating a child's parental preferences. The GAL stated S. felt she had a strong, loving, close, and open relationship with her father but a tense and conflicted relationship with her mother that was stressful to her. The GAL specifically noted there could possibly be a long-standing attempt by John to influence S. in favor of him, but she was not able to conclude parental alienation had occurred. The GAL stated she could not say whether John could provide superior care apart from S. having a better relationship with him at the time of the interviews. The record indicates that Angel has been obligated to provide the structure, stability, and discipline for S.

The trial court found and concluded

> Angel provides a good, safe, structured, and stable home for S. She has always been S.'s primary caregiver. She assures that medical appointments are made and kept, homework is done, and confirmation classes are attended. She presents S. with healthy opportunities to enhance S.'s knowledge and expand S.'s interests. She regularly attends school conferences and S.'s extracurricular events.

The trial court could have also added there is little in the record to suggest that John has provided any of the above needs or particularly supported Angel in her efforts to do so.

Angel and John have different expectations of their children and different methods of parenting. At this point in her life, S. prefers the less-structured parenting method of John. John contends physical care should be modified because of S.'s parental preferences, which John implies is based on Angel's relationship with Mark McVey and S.'s concern of being the only child left in the home after J. departed.

Angel and the children have lived with McVey in the past, but Angel and McVey are not presently living together. McVey has a history of driving while intoxicated and presently has no driver's license. He and Angel often argued and fought in front of the children and police were often called to the residence when they were living together. McVey and Angel continue to have an ongoing relationship. Neither the treating psychiatrist nor the GAL who interviewed S. four times mentioned McVey or that S. had a problem with the relationship between McVey and her mother in their reports, nor was there any suggestion J.'s departure from the household created any source of anxiety or concern on the part of S.

## II. Standard of Review

Dissolution matters are reviewed de novo. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Nevertheless, weight is given to the trial court's findings of fact, especially as it is relates to a witness's credibility. *Id.* A trial court's award of attorney fees is reviewed for abuse of discretion. *Id.*

## III. Discussion

The legal framework applicable to custody modifications has been long established and often repeated.

To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. *Id.* They must relate to the welfare of the children. *Id.* A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's wellbeing. *Id.* The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons. *Id.*

The trial court found that John failed to establish there had been material and substantial changes in circumstances, and neither do we find he established such changes. John's claims for modification center around S.'s stated desire to live with him and the reasons he contends she has arrived at that decision. The trial court, as well as the GAL, carefully considered the factors that have been set out by the courts to consider when evaluating a child's parental preference. *See In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258-59 (Iowa Ct. App. 1985). The GAL went ahead to state a trial would be damaging to S., and recommended a discussion between S. and Angel with the end result of a settlement agreement between the parties respecting S.'s expressed desire that the court grant physical care to John. S. continued to refuse any direct discussion with her mother about her desires. Further, the GAL recommended that in the event of a

trial, S.'s parental preference be given considerable weight. However, a teenage child's parental preference is given less weight in a modification action than an original custody determination. *In re Marriage of Hoffman*, 867 N.W.2d 26, 35 (Iowa 2015).

The record did not establish S. was suffering from anxiety until long after the modification request was filed. Impeding actions requesting modification of a child's physical care generally involve the possibility of changing one's family of residence, parental rules, circle of friends, school attended, and a myriad of other factors important in a child's life. Consideration of these factors and the balancing of freedom and restraint, the known and the unknown, and the impact on the relationship with each parent that would be affected is naturally going to leave a child confused and anxious. S. had been advised by John of the pending modification long before the anxiety disorder had been diagnosed.

Even if we are to consider the parental preference of S. to be a substantial change in circumstances, John must also meet the criteria to show he has the ability to minister more effectively to the needs of S. *See id.* at 32. John asserts that he has a better relationship with S. The GAL report would support that assertion but one must wonder about the foundation and source of that "relationship." Angel has been the disciplinarian and the one who has been charged with addressing the educational, social, and religious needs and training of S. John has been primarily absent from assuming those responsibilities. It is true that Angel's role as the primary caretaker naturally places those duties substantially on her. The trial court noted John's parenting of S. has involved few expectations and rules. John has promoted his own parenting approach,

creating conflict and confusion. Once again, we agree with the trial court's conclusion that John has established he can and would provide different care for S., but he has not established it is in S.'s best interest for her to be placed in John's physical care.

The trial court awarded Angel one-half of her attorney fees. John has slightly greater income than Angel. We cannot say the award is an abuse of the trial court's discretion. *See Sullins*, 715 N.W.2d at 247. Costs of the action are assessed to the appellant. No appellate attorney fees are awarded.

**AFFIRMED.**