**IN THE COURT OF APPEALS OF IOWA**

No. 21-1943
Filed March 2, 2022

**IN THE INTEREST OF E.W. and J.F.,**
        **Minor Children,**

**E.W., Minor Child,**
        **Appellant,**

**DUSTY LEA CLEMENTS,**
        **Guardian Ad Litem-Appellant**

**S.F., Mother,**
        **Appellant.**
_____

        Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda,

District Associate Judge.

        A mother appeals the termination of her parental rights to two children.  One

child and her guardian ad litem also appeal the termination.  **AFFIRMED ON BOTH**

**APPEALS.**


        Allison M. Udelhoven of Shinkle, Lynch & Udelhoven, Des Moines, attorney

for appellant E.W., minor child.

        Dusty Lea Clements of Clements Law and Mediation, Newton, guardian ad

litem for the children and attorney for J.F., minor child.

        Deborah L. Johnson of Debra L. Johnson Law Office, P.C., Altoona, for

appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to two children. E.W., a minor child, also appeals the termination. E.W.'s guardian ad litem (GAL) also appeals the termination. The mother claims termination is not in the children's best interest and a permissive exception should be applied to preclude termination. E.W. also contends the termination is not in her best interest and a permissive exception should be applied to preclude termination. E.W. also asserts the district court improperly excluded her from a portion of the termination hearing.

On our close review of this record, we find termination is in the children's best interest. Further, the permissive exceptions are insufficient on this record to preclude termination. Finally, E.W.'s claim concerning her exclusion from a portion of the termination hearing was waived. Even if we were to consider such issue, we determine the court had the authority based on the language of the applicable statute to make a best interest finding regarding E.W.'s attendance. Accordingly, we affirm the district court.

## I.    Background Facts and Proceedings

Over nine years of services, a series of four adjudications, and five separate removals cumulated in an October 2021 termination hearing. E.W., fifteen years-old, and J.F., seven years-old, are half-siblings who share a mother but have different fathers.[1] The mother has been involved with the Iowa Department of Human Services (DHS) off and on since 2005, predominately due to her substance abuse.[2] The previous three child-in-need-of-assistance (CINA) proceedings

---

[1] E.W. turned fifteen years-old the week of the termination hearing.
[2] The mother's involvement in 2005 concerned an older sibling.

followed a pattern. The children would be removed from their mother's care, she would complete substance abuse treatment, regain care of the children, and then relapse. E.W. has been removed from her mother's care a total of sixty-eight months over the past nine years. J.F. has also been removed from his mother's care five separate times, the most recent removal being over seventeen months.[3]

The instant proceedings began in March 2020 due to allegations of domestic violence and substance abuse. The prior CINA case had closed a mere three months earlier in December 2019. Following the filing of the CINA petition but before the adjudication hearing, the Jasper County Sheriff's Office executed a search warrant on the mother's home. The search resulted in the discovery of methamphetamine and marijuana in the mother's bedroom. The deputies also located marijuana in an older sibling's room.[4] J.F. tested positive for methamphetamine. The mother was arrested. E.W. was placed with her father. J.F. was initially placed in foster care but later transitioned to his father's home. The children were adjudicated CINA for a fourth time on July 8, 2020.

Throughout the life of the underlying CINA proceeding, the mother refused to participate in substance abuse treatment, although such was recommended consistently by DHS. The mother's visitation never progressed beyond supervised visitation. On June 21, 2021, the mother entered guilty pleas to child endangerment, possession of marijuana, and neglect of a dependent person. She

---

[3] Unlike E.W., the record does not contain the total months of removal for J.F. during the four separate CINA proceedings.

[4] That child has since reached the age of majority and is not a part of these proceedings.

was sentenced to ten years in prison. The mother is eligible for parole in June 2022.

The State filed a petition to terminate the mother's parental rights to E.W. and J.F. on July 19, 2021. While the hearing was initially scheduled for August 6, it was continued due to the mother's request for a continuance and new counsel. E.W. was represented by a separate attorney and a GAL. During the August 6 hearing, E.W.'s attorney requested that the child be permitted to attend the termination hearing. The State, E.W.'s GAL, and her father resisted such request. The court entered a written order detailing the ruling on E.W.'s request.

The termination hearing commenced on October 15 and the court allowed E.W. to testify and allowed time for her counsel to confer with her between each of the State's witnesses, in accordance with the previous ruling. E.W. was not permitted in the courtroom during the presentation of the State's witnesses. The State presented testimony from two witnesses, the deputy leading the execution of the search warrant and the social worker assigned to the case. The State offered thirty-eight exhibits.[5] The mother, who remained in prison, declined to participate in the proceedings. Counsel for the mother offered a letter authored by the mother. The court admitted the letter as an exhibit. The district court terminated the mother's parental rights to both children on December 6, pursuant to Iowa Code section 232.116(1)(d), (f), (i), (j), and (m) (2021). The mother and E.W appeal.

---

[5] One of the State's exhibits is a letter from E.W.'s adult sister, detailing an incident where her mother allegedly "sold" her when she was fourteen years-old to a male in exchange for an eight-ball of methamphetamine.

**II. Standard of Review**

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Our primary concern is the best interest of the child. Iowa R. App. P. 6.904(3)(n).

**III. Discussion**

We generally use a three-step analysis to review the termination of a parent's rights. *A.S.*, 906 N.W.2d at 472. We consider "(1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). "However, if a parent does not challenge a step in our analysis, we need not address it." *Id.*

Neither the mother nor E.W. challenge the statutory grounds relied on by the district court, so we do not address that step. The mother claims termination is not in the best interest of the children, and further contends the court improperly terminated her parental rights despite the applicability of several permissive exceptions pursuant to Iowa Code section 232.116(3). Both E.W., through her attorney, and the GAL, also challenges the best interest findings of the district court and the district court's rejection of permissive exceptions. Lastly, E.W., through her attorney, claims she was improperly excluded from the termination hearing.

### A. Best Interests of the Children

The mother contends termination is not in the children's best interests. In determining the best interests of the child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted).

The mother claims termination was not in E.W.'s and J.F's best interests because there are less restrictive options available, namely giving their fathers custody. The GAL makes the same argument in regards to E.W. Both children are currently placed with their respective fathers and the mother signed a document shortly before the termination hearing which indicated she was giving the fathers custody. The mother claims she will not contest custody in the future. Thus, she claims the children are in safe placements and there is no need to terminate her rights.

We, like the district court, are not persuaded by the mother's arguments that she does not intend to contest the custody of the children in the future. First, the document she signed giving E.W.'s father custody over the child contains the provision that the mother can revoke the custody at any time. Moreover, the document was executed in close proximity to the scheduled termination hearing despite DHS recommendations that she transfer custody for roughly sixteen

months prior to the hearing. As the district court noted, that gives rise to serious questions over the sincerity of her willingness to transfer custody. Second, even if she does not contest custody in the future, retaining parental rights gives her a powerful tool to access and influence the children. The mother's lengthy history speaks volumes. And both of the fathers, while having custody of the children, support termination of the mother's rights.

As the social worker in this case noted, termination is necessary to provide permanency and stability to the children. For E.W. in particular, the social worker testified it is important she be given the room and stability to work through the trauma from the preceding nine years. E.W.'s mental health at the time of the termination hearing was described as fragile. She has a history of self-harm, the most recent incident occurring five weeks prior to the termination hearing. It will be difficult for E.W. to heal from past trauma. On this record, it appears her recovery will be more difficult with her mother's parental rights intact.

The mother and E.W. also argue termination will be detrimental to E.W.'s mental health. As noted, E.W. has mental health difficulties. Without a doubt, termination proceedings may be traumatizing for children, particularly where, as here, they object to the termination. However, one need only look to E.W.'s comments about her mother to see the trauma she has caused. For instance, E.W. wrote a letter to her mother that noted, "I'm mentally exhausted from what you're doing right now, so please, stop, for me, to keep me alive because the stress can and will kill me." She further explained, "I can't seem to cope anymore, I take everything out on myself, and you don't seem to care." She concluded the letter by stating, "Also I read a book the other day and there was a quote that said 'before

I die, I want to know why my mom chose drugs over me and my brother' I really want to know why as well." The evidence supports that E.W.'s mental health issues stem from trauma the mother inflicted over the past nine years.

While E.W. testified at the termination hearing, she was unable to recite any reason she believed her mother's rights should not be terminated, simply stating that she "did not know." And as highlighted by the State's cross-examination, while the mother elected not to participate in the termination proceedings, she had contact with her daughter on the day of the termination hearing just prior to E.W.'s testimony.

J.F. has also experienced extensive trauma, being removed from his parental custody on five occasions in his short life. He testified positive for methamphetamine at the time of the most recent DHS involvement. The mother's lengthy history with DHS, resulting in five removals, indicates further instability and trauma will likely occur if the mother's rights are not terminated. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."). Since 2015, the mother has been named the person responsible for abuse in seven separate founded or confirmed abuse reports. While termination may be difficult, continuing the mother's legal relationship with the children would be maintaining a situation that has already caused significant damage and will likely cause more in the future. Termination is in the children's best interest.

## B. Permissive Exceptions

The district court narrowed in on the issue it faced with respect to the requested application of the permissive exceptions, noting, "The Court is faced

with a difficult decision, in one aspect it is a legal decision but in reality is it more an emotional one; a 15 year old who does not want her mother's parental rights to be terminated, notwithstanding a mother who has done nothing to merit the retention of her parental rights."

The mother and E.W. claim that the court should have used the exceptions in section 232.116(3) to prevent the termination of the mother's parental rights. In particular, they claim that a close bond, E.W.'s objection to termination, and E.W.'s placement with her father should preclude termination. The mother also claims J.F.'s placement with his father precludes termination of her parental rights.

The factors in section 232.116(3) "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475. We "use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016)). The parent resisting termination bears the burden of establishing an exception. *Id.* at 476.

First, E.W. and her mother claim their close bond should preclude termination. *See* Iowa Code § 232.116(3)(c). It is true that E.W. and her mother appear to share a close bond. But based on this record, we question whether the bond shared is a healthy one. And, a close bond, by itself, is insufficient to preclude termination. There must be "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness" of the relationship. *Id.*; *see also In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (noting the central issue under section 232.116(3)(c) was "whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the

parent's] inability to provide for [the child's] developmental needs"). Here, as described above, continuing the legal relationship between the mother and E.W. will do little to address the nearly decade longer pattern of trauma inflicted upon E.W. Thus, termination is not detrimental to E.W. despite the bond she shares with her mother.

Similarly, E.W.'s opposition to termination is insufficient to prevent the termination of her mother's parental rights. *See* Iowa Code § 232.116(3)(b). Our caselaw has recognized that the "[p]references of minor children while not controlling are relevant and cannot be ignored." *In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (quoting *In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258 (Iowa Ct. App. 1985)). However, we have also noted that "[o]ur overriding concern must be the long-term best interests of the children." *In re A.S.*, No. 16-1984, 2017 WL 710562, at *3 (Iowa Ct. App. Feb. 22, 2017); *see also A.R.*, 932 N.W.2d at 592 ("The best interests of a child is not always what 'the child wants.'" (citation omitted)). In this case, E.W. was unable to articulate why she believed the legal relationship between herself and her mother should remain intact. We recognize E.W.'s GAL stated that recommending against termination for E.W. was a difficult decision and that she was not "in any way" recommending that the children be reunified with the mother, and termination should have been completed "years ago." We determine given the extensive history of trauma inflicted by the mother, E.W.'s objections are insufficient to prevent termination.

Finally, the mother claims that the district court should have declined to terminate her parental rights to both children because they currently reside with their respective fathers. *See* Iowa Code § 232.116(3)(a). We find their current

placement fails to preclude termination. First, as explained above, the children need stability in order to work through the years of hardship they have endured while removed from the mother's care. The district court found, and the record amply supports, that the mother, who did not cooperate with DHS for sixteen months prior to the termination, would likely not comply with a custody order once she completes her term of incarceration.

We recognize that the fathers, through counsel, appear to have indicated a willingness to consider letting the children contact their mother if she is sober. Neither testified at the termination hearing. Both indicated through their respective counsel that they supported termination of the mother's parental rights. Leaving the mother's parental rights intact would permit continual influence by the mother on the children, even if the father's determine such contact is harmful. Accordingly, the district court did not commit error by failing to apply the permissive exceptions to termination.

## C.      Iowa Code Section 232.91(4)

E.W. alleges the district court improperly excluded her from the termination proceedings due to the provisions of section 232.91(4), which provides:

> If a child is of an age appropriate to attend a hearing but   the child does not attend, the court shall determine if the child was informed of the child's right to attend the hearing. A presumption exists that it is in the best interests of a child fourteen years of age or older to attend all hearings and all staff or family meetings involving placement options  or services provided to the child. The department shall allow the child to attend all such hearings and meetings unless the attorney for the child finds the child's attendance is not in the best interests of the child.    If the child is excluded from attending a hearing or meeting, the department shall maintain a written record detailing the reasons for excluding the child. Notwithstanding sections 232.147 through

232.151, a copy of the written record shall be made available to the child upon the request of the child after reaching the age of majority.

E.W. was represented by both an attorney and a GAL. The GAL for E.W. did not believe it was in E.W.'s best interest to be present for the hearing. The attorney for E.W. advocated that E.W. be allowed to attend a portion of the hearing. The State and her father also resisted her presence. The district court determined that E.W.'s presence for the full hearing would not be in her best interests, but allowed her to "meaningfully participate" by testifying and permitting her attorney to meet with her between each witness.

As a preliminary matter, we question whether this issue is properly before us for our review. Parties are generally only permitted to appeal adverse decisions by the district court. *See, e.g.*, Iowa R. App. P. 6.1401 (explaining that the notice of appeal gives notification that the party is appealing all "adverse rulings and orders"). Here, the district court appears to have allowed what E.W.'s counsel requested. Specifically, counsel informed the court at the August 6 hearing that counsel "would be open to maybe having [E.W.] here for part of the hearing and sitting out for part of it." Ultimately, that is exactly what the district court opted to do—allowing E.W. to testify but also requiring her to sit outside of the proceedings for the two other witnesses. Further, counsel was given an opportunity between each witness to confer with E.W. Thus, the court effectively granted E.W.'s stated request and there is no error for this court to review.

Even if we elected to address the merits of E.W.'s argument, as noted by the State, none of the statutory provisions cited by E.W. speak directly to the question of whether the court may exclude a child from a hearing based upon a

finding that attendance would not be in the child's best interest. The child argues that the plain text of the relevant statute provides that the child "shall" be allowed to attend all hearings "unless the attorney for the child finds the child's attendance is not in the best interest of the child." Iowa Code § 232.91(4).

But that quoted statutory language relates to DHS, not the court. We believe the answer to the question raised is found in the use of the word "presumption" in the statute. The plain meaning of such word implies the court may make a contrary finding based on evidence. The district court found attendance would be contrary to the child's best interest, detailing specific findings in a September 14, 2021 order. We determine that the language concerning DHS obligations does not preclude the court from acting in the best interest of the child and we find the court did not err in excluding E.W. for a portion of the hearing.

**D.    Conclusion**

Termination is in the best interests of E.W. and J.F. We decline to apply a permissive exception. If E.W.'s argument concerning her presence at the termination hearing was not waived, we determine the district court properly determined E.W.'s mental health concerns could be balanced with E.W.'s meaningfully participation in the hearing through her testimony and opportunity to conference with her attorney following each of State's two witnesses. We affirm.

**AFFIRMED ON BOTH APPEALS.**